# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:08cv425-MU-2
## (3:03cr231-1-MU)

| | |
|---|---|
| JUAN CARLOS, BARRAGAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the Court on Petitioner's <u>de facto</u> motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, filed September 16, 2008 (Doc. No. 1) and its supplement, filed November 26, 2008 (Criminal Case No. 3:03cr231-1, Doc. No. 655); Respondent's Motion for Summary Judgment, filed July 20, 2009 (Doc. No. 7); and Petitioner's response to Respondent's Motion for Summary Judgment, filed December 15, 2009. (Doc. No. 10).

## I. FACTUAL AND PROCEDURAL HISTORY

On December 16, 2003, a Bill of Indictment was filed charging Petitioner and 23 other persons with numerous violations of federal law. (Criminal Case No. 3:03cr231-1, Doc. No. 26). Relevant here, Count One charged Petitioner with conspiring to possess with intent to distribute five kilograms or more of cocaine powder and 100 kilograms or more of marijuana in violation of 21 U.S.C. §846; Count Five charged him with possession with intent to distribute 50 kilograms of marijuana and aiding and abetting that offense in violation of 21 U.S.C. §§ 841and 18

1

U.S.C. § 2; and Count Six charged him with using and carrying a firearm during and in relation to a drug trafficking crime, and with possessing that firearm in furtherance of such drug trafficking offense, all in violation of 18 U.S.C. § 924(c)(1). (Id.).

From July 18 until July 22, 2005, the Court conducted a jury trial in this matter. During the course of that trial, the Government presented evidence which tended to show that cooperating co-conspirator Jose Orosco met Petitioner in December 2001 when Orosco helped deliver 10 kilograms of cocaine to Petitioner at his garage in Charlotte, North Carolina. (Trial Transcript, Volume III, filed February 9, 2006, at 334, 336-38). On that occasion, Orosco observed Petitioner in possession of a 9 mm firearm; and that Petitioner sold him a pistol on a subsequent occasion. (Id. at 338 and 369). Orosco also testified about four additional cocaine shipments which he saw Petitioner receive, one for 13 kilograms from Mexico, one for 40 to 50 kilograms from Arizona, another for 23 kilograms from Arizona, and one for five kilograms from Atlanta. (Id. at 344-51). Orosco told the jury that he stopped working for Petitioner because he refused to pay Orosco for working as his middleman, driver and accompanying him on drug trips; and that on an occasion when the two argued about the non-payment issue, Petitioner patted his gun and threatened to "take care" of things. (Id. at 352-54). Orosco identified persons who he had seen selling drugs for Petitioner at his garage; and he testified to having witnessed Petitioner using his cellular telephone to arrange drug deals. (Id. at 353-55). Finally, Orosco told the jury that he witnessed Petitioner take possession of between 76 and 86 kilograms of cocaine. (Id. at 356).

David Martinez, another cooperating co-conspirator also testified against Petitioner. According to Martinez, he met Petitioner in June 2002 when he was taken to Petitioner's garage by a friend. (Trial Transcript., Volume II, filed February 9, 2006, at 144-45). During that first

meeting, Martinez reportedly observed five kilograms of cocaine and five pieces of heroin being unloaded into Petitioner's garage from a vehicle's hidden compartment. (Id. at 145-47). Martinez told the jury that about two weeks later, he began working as a courier for Petitioner. (Id. at 149-50). Martinez testified that he initially began by delivering small amounts of cocaine but later delivered large quantities, and eventually began selling drugs that Petitioner supplied to him. (Id. at 150-58). Martinez also said that on an occasion, he traveled with Petitioner to pick up two kilograms of cocaine from somewhere between Greensboro and Durham, North Carolina; and that on two occasions, he helped unload shipments of 25- and 20-kilogram packages of cocaine that had been transported to Petitioner from San Diego, California in a minivan. (Id. at 151-52, 160-64 and 168-76). Martinez further testified that while working for Petitioner, he observed the delivery of large shipments of cocaine to the garage; that, in total, he saw Petitioner and his organization receive/distribute approximately 100 kilograms of cocaine and numerous pounds of marijuana; and that Petitioner kept a scale in his office at the garage for weighing drugs. (Id. at 157-170, 207). In addition, Martinez identified Petitioner's voice on the recordings which the Government played for the jury and named several persons whom he had observed working for Petitioner's drug enterprise and described the duties that each one performed. (Id. at 159-167 and 182 to 207).

The Government's evidence further established that authorities with the Drug Enforcement Administration (the "DEA" hereafter) became aware of Petitioner's unlawful activities when, on June 24, 2003, Martinez was caught with a firearm and with a kilogram of cocaine powder which he reportedly received from Petitioner at his garage. (Trial Tr., Vol. II at 87-91). After his arrest, Martinez agreed to cooperate in an investigation of Petitioner and his garage. (Trial Tr., Vol II at 90-91). Consequently, on that day, Martinez was given $16,000 by the DEA

to make a partial payment to Petitioner for the cocaine with which he had been caught. In turn, Martinez went to Petitioner's garage and paid the money to two of Petitioner's workers -- his brother, Enrique Barragan and his nephew, Armondo Quezada. (Trial Tr., Vol. II at 96-98 and 172-76). On July 2, 2003, Martinez, again working under the supervision of the DEA and wired with a recording device, met with Petitioner and paid him the $6,000 balance for the kilogram of cocaine. (Trial Tr., Vol. II at 176-77). On that occasion, Petitioner spoke at length about his drug dealing activities and his ability to obtain large quantities of drugs from Mexico. (Trial Tr., Vol. II at 176-77).

    Based upon the foregoing information, the DEA obtained a warrant to intercept and record telephone calls from Petitioner's phones. (Trial Tr., Vol. II at 100-105). The DEA intercepted and recorded Petitioner's phone calls from September 2003 until December 2003. (Trial Tr., Vol. II at 105-06). At trial, 17 such recorded calls were played for the jury. Those recordings contained conversations wherein Petitioner was ordering, discussing, arranging and/or conducting narcotics transactions. One such conversation tended to indicate that a drug deal would soon take place at the home of Petitioner's brother and, therefore, DEA established surveillance on that residence. On December 6, 2003, DEA agents observed Petitioner, his brother and certain other co-defendants unloading several large black trash bags from the trunk of a car into the brother's home. When agents attempted to conduct a "knock-and-talk" with the home's occupants, several tried to flee the scene. At that point, the agents entered the home and found Petitioner standing approximately five feet away from 100 pounds of marijuana inside the black trash bags. Petitioner also had a 9 mm firearm in his waistband. Further investigation revealed that Petitioner was in possession of the cell phone from which certain incriminating calls were recorded by authorities; that Petitioner had an address book containing the phone

numbers of several co-defendants along with a drug ledger; and that a subsequent search of his garage resulted in the discovery of more than 9 grams of cocaine base inside an office safe. Such investigation culminated with the charges at issue in this case.

For his part, Petitioner presented testimony from Trent Allen, who told the jury that he owned a carpentry company and that Petitioner previously had worked for him for nearly a year; that he (Allen) had remained in contact with Petitioner over the years; and that Petitioner had been a good and dependable employee. (Trial Transcript, Volume IV, filed February 9, 2006, at 413-16). Allen also told the jury that he knew that Petitioner owned and operated a mechanics garage, he had visited that garage on numerous occasions, he had hired Petitioner to work on his vehicles, and he had referred business to Petitioner over the years. (Id.). Allen also testified that he was surprised about Petitioner's arrest; and had signed the bond for Petitioner's pre-trial release. (Id.). On cross examination, Allen admitted knowing that Petitioner carried a firearm, and indicated that Petitioner had a permit for it. (Id. at 423).

William Hampton also testified as a witness for Petitioner. Hampton stated that he is a minister and Petitioner had been a member of his church for about two years; that Petitioner was very faithful and dedicated; and that Petitioner was an honest person. (Trial Transcript, Volume IV, filed February 9, 2006, at 427-28). On cross-examination, Hampton acknowledged that Petitioner had joined his church after his 2003 arrest on the instant charges. (Id. at 428). Thereafter, defense counsel introduced into evidence a copy of Petitioner's certificate of citizenship and his concealed weapon permit. Trial Transcript, Volume IV, filed February 9, 2006, at 429-30).

After hearing all of the evidence, the jury found Petitioner guilty of having engaged in a conspiracy whose object it was to distribute five kilograms or more of cocaine powder and 100

5

kilograms or more of marijuana under Count One of the Indictment. (Criminal Case No. 3:03cr291-1, Doc. No. 426). The jury also found Petitioner guilty of possessing with intent to distribute less than 100 kilograms of marijuana under Count Five, and guilty of using and carrying a firearm during and in relation to a drug trafficking offense under Count Six. (Id.).

After hiring a new attorney and replacing his court appointed counsel, on June 15, 2006, Petitioner filed a Sentencing Memorandum objecting to various calculations and recommendations in the Pre-Sentence Report. (Criminal Case No. 3:03cr291-1, Doc. No. 576). Specifically, replacement counsel argued that the jury's verdict that the conspiracy involved more than five kilograms of cocaine powder warranted an offense level of 32 not 36; and that if the Court was considering attributing any additional amounts of drugs to him or imposing any sentencing enhancements, the case of United States v. Booker, 543 U.S. 220 (2005) and its progenitors, required the Court to use the reasonable doubt standard of proof for the evidence which was being considered in support of those increases. (Id. at 1-6). In any event, counsel argued that the Government failed to produce sufficiently reliable evidence to establish that Petitioner was a leader under the Guidelines; it also failed to produce sufficiently reliable evidence of Petitioner's culpability for 62 kilograms of cocaine and 71 kilograms of marijuana as reflected in the PSR's calculations; and that justice would be adequately served and the sentencing factors satisfied by the imposition of the statutory mandatory minimum 10 year sentence for the conspiracy conviction along with a consecutive five-year statutory mandatory minimum term for the firearm conviction for a first-time offender such as Petitioner. (Id. at 7-17).

On June 27, 2006, the Court held Petitioner's Sentencing Hearing. On that occasion, defense counsel again challenged the drug quantities attributed to Petitioner as unsupported by reliable evidence, and challenged the four-level enhancement for Petitioner's leadership role.

(Transcript of Sentencing Hearing, filed July 24, 2006, at 4-6). Defense counsel also called another Pastor from Petitioner's church to testify concerning the impoverished condition of Petitioner's family both here in Charlotte and back in Mexico. (Id. at 11-12). Ultimately, defense counsel asked the Court to consider a variance to a total of 15 years imprisonment. (Id. at 12-13).

In response, the Government noted that it was relying on evidence from co-conspirators' testimony and other information obtained during the DEA's investigation of the case, including that gleaned from the wiretaps, to establish the drug quantities and Petitioner's role in the offense; and that Petitioner had failed to present any evidence to rebut its presentation. (Id. at 6-7). The Government also argued that there was no basis to support a downward variance by the Court because Petitioner had every opportunity to make an honest living as a citizen of this Country but instead chose to make a quick and easy living by trafficking in illegal drugs. (Id. at 13-15). Therefore, the Government asked the Court to adopt the calculations and recommendations contained in the PSR. (Id. at 8).

Thereafter, Petitioner addressed the Court and raised two questions which were entirely unrelated to the issues which were argued by the attorneys. (Id. at 16-18). Petitioner's interpreter also read his statement in which he acknowledged his convictions but denied his guilt. (Id. at 18). Instead, Petitioner claimed that he merely had surrounded himself with bad people, he apologized for having caused problems and asked for mercy. (Id. at 18-19).

For its part, the Court told defense counsel that it might have been persuaded by her arguments if the PSR's calculations had not been corroborated by the DEA's investigation. (Id. at 9). Instead, the Court found that the case was "the result of extensive, lengthy and very professional operative investigation. And much of what the corroborating witnesses say is, in

fact corroborated by the evidence. . . ." (Id. at 9-10). Therefore, the Court overruled defense counsel's objections and adopted the PSR in its entirety. (Id. at 10). Petitioner's Offense Level was set at 40, his Criminal History Category was set at I, and his resulting range of imprisonment was 292 to 365 months imprisonment. (Criminal Case No. 3:03cr231-1, Doc. No. 598). Ultimately, the Court found that Petitioner had failed to demonstrate that the advisory Guidelines sentence was unwarranted, and sentenced him to 292 months imprisonment for Count One, to a concurrent 240-month term for Count Five, and to a 60-month consecutive term for Count Six. (Criminal Case No. 3:03cr291-1, Doc. No. 597).

Petitioner timely appealed his case to the Fourth Circuit Court of Appeals. (Criminal Case No. 3:03cr231-1, Doc. No. 593). Petitioner argued that the evidence was insufficient to support his firearm conviction because the Government failed to prove that the pistol was used in furtherance of a drug trafficking crime, and that the testimony concerning his possession of the pistol at times other than the occasion alleged in the Indictment could not be used to support that conviction. United States v Barragan, 222 F. App'x 257, 259 & n.1 (4th Cir. 2007) (unpublished). Petitioner also challenged his sentence on the conspiracy conviction, arguing that this Court erred in determining that he could be held responsible for 62 kilograms of cocaine and 71 kilograms of marijuana because the jury's verdict supported a finding of only five to 15 kilograms of cocaine; that the Court's conclusion was based upon unreliable testimony from co-conspirators; and that the Court erred in using the preponderance-of-the-evidence standard to reach that conclusion. Id. at 260-61 & n. 2. Petitioner further argued that this Court erred in imposing the four-level leadership enhancement under U.S. Sentencing Guidelines § 3B1.1(a). Id. at 261. Last, Petitioner argued that this Court erred in concluding that it lacked the authority to grant a downward variance from the Guidelines. Id. at 261-62.

However, the Court of Appeals rejected all of Petitioner's claims. First, that Court found that there was substantial evidence linking Petitioner's firearm to the drug offenses involved in the case and the evidence of his hand gun permit did not negate that connection. (Id. at 259-60). The Court of Appeals also found that this Court properly testimony about Petitioner's having carried the gun on other occasions. (Id. at 260 n. 1). Next, citing the information provided to the Probation Officer by a confidential source, the evidence obtained by the DEA from its wiretaps and recordings, and the testimony of co-conspirators Orosco and Martinez, the appellate Court further found that the Court's determination that Petitioner was responsible for at least 62 kilograms of cocaine was "amply supported." (Id. at 260-61). Nor did this Court's use of the preponderance-of-the-evidence standard to determine the sentencing enhancements violate the Sixth Amendment as alleged by Petitioner. (Id. at 260 n. 2). Concerning Petitioner's challenge to his role enhancement, the Court of Appeals determined that there was evidence that he was the "head" and "chief" of a drug organization which involved more than five participants; therefore, the subject enhancement was not erroneously applied. (Id. at 261). Finally, the Court of Appeals determined that the evidence on which Petitioner relied was insufficient to establish that this Court erroneously believed that it lacked authority to grant a downward variance. (Id. at 262). Accordingly, the appellate Court affirmed both Petitioner's convictions and sentences. (Id.).

In addition, Petitioner's motion for a rehearing en banc was denied. (Criminal Case No. 3:03cr291-1, doc. No. 632). Likewise, the United States Supreme Court declined Petitioner's Petition for a writ of certiorari. United States v. Barragan, 552 U.S. 939 (2007).

Consequently, on September 12, 2008, Petitioner filed the instant motion to vacate attacking his attorneys' performances over the course of his trial and appellate proceedings. In

particular, Petitioner alleges that his trial counsel was ineffective for failing to challenge the absence of an instruction directing the jury to find the specific drug quantities that were attributable to Petitioner; and that trial and appellate counsel both failed to raise U.S. Sentencing Guidelines Amendment 484 as a basis for decreasing the amount of usable marijuana which could have been attributed to him. As was noted, Petitioner's de facto motion was supplemented on November 26, 2008 with a form Motion to Vacate. (Criminal Case 3:03cr291-1, Doc. No. 655). Such form-motion essentially reiterates the claims raised in the de facto motion.

On July 20, 2009, Respondent filed a Response denying the material allegations in Petitioner's motion. Specifically, Respondent contends that the Court's instruction, taken as a whole, properly focused the jury's inquiry on the amount of drugs attributable to him under the conspiracy charge. (Doc. No. 6 at 11). Furthermore, Respondent argues that even if trial counsel should have requested a more exacting instruction, Petitioner cannot establish that he was prejudiced by counsel's performance in this regard because he has failed to allege or prove that a properly instructed jury would have found him responsible for only five kilograms of cocaine powder. (Id. at 12). That is, Respondent argues that in light of the overwhelming and virtually uncontroverted evidence reflecting Petitioner's involvement with at least 100 kilograms of powder cocaine, he cannot establish any prejudice in connection with this claim. (Id. at 12-13).

Concerning Petitioner's second claim, Respondent asserts, inter alia, that given the weight of the drug evidence, Petitioner has failed to point to any other evidence to establish that counsel would have had a reasonable basis to challenge whether all of the marijuana attributed to him was usable. (Id. 14-15). Moreover, Respondent argues that because Petitioner's conspiracy conviction carried the harshest penalty as between all of his convictions, even if counsel had

successfully challenged the amount of marijuana attributable to him, he still would not have received a lower sentence. (Id. at 16). Ultimately, therefore, Respondent contends that Petitioner cannot establish any prejudice in connection with this claim. Therefore, Respondent has filed a Motion for Summary Judgment asserting that it is entitled to a judgment as a matter of law. (Doc. No. 7).

On December 15, 2009, Petitioner filed his purported response to Respondent's Motion for Summary Judgment. Such response instead argues that the evidence was insufficient to establish that he knowingly distributed or aided and abetted the possession or distribution of five kilograms of cocaine and 100 kilograms of marijuana or otherwise was involved in a conspiracy. (Doc. No. 10). Rather, Petitioner claims the evidence merely established that he was present when the marijuana was discovered by DEA officials. 9Id.). Petitioner also argues that the evidence was insufficient to establish that he violated § 924(c) because it failed to show that his lawful possession of the gun was in furtherance of the drug conspiracy charged in Count One. (Id.).

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact and it appears that the moving party is entitled to a judgment as a matter of law. <u>United States v. Lee</u>, 943 F.2d 366, 368 (4th Cir. 1991) (applying standard to motion to vacate). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court has carefully considered the arguments raised by the parties along with the relevant legal precedent, and has determined that Respondent is entitled to a judgment as a matter of law. Therefore, for the reasons stated herein, and for the further reasons set forth in Respondent's Response, Respondent's Motion for Summary Judgment will be granted, and Petitioner's motion to vacate will be denied and dismissed.

### III. DISCUSSION

**A. Petitioner's claims of ineffective assistance of counsel are factually and/or legally baseless.**

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-91 (1984); see also Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). In measuring that performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689.

A petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 725 F.2d 1425, 1430-31 (4th Cir. 1983)). To meet this burden, a petitioner must demonstrate not only "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," but also that "the result of the proceeding was fundamentally unfair or unreliable." Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Strickland, 466 U.S. at 694 and Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Furthermore, when there is an allegation that counsel was ineffective at sentencing, in order to establish prejudice, a petitioner must show that his "sentence would have been more lenient" absent counsel's errors. Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir.

12

1999). In the event a petitioner fails to show prejudice, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290.

> **1. Petitioner cannot demonstrate any prejudice by his claim that trial counsel was ineffective for failing to challenge the Court's jury instruction concerning the amount of cocaine that was attributable to him personally.**

By his first claim, Petitioner alleges that trial counsel was ineffective for failing to challenge the Court's jury instruction under the then-recent case of United States v. Collins, 415 F.3d 304 (4th Cir. 2005). Petitioner contends that counsel should have challenged the Court's failure to instruct the jury that it had to use Pinkerton[1] principles in order to determine the amount of cocaine powder that was attributed to him personally, as opposed to the amount that was attributable to the entire conspiracy.

In Collins, the Fourth Circuit expressly rejected an argument that Pinkerton was applicable to conspiracy charges. On the contrary, the Court stated that "[t]he principles outlined in Pinkerton, [] have no applicability to a conviction under [§] 846 . . . . [They] are relevant when a conspirator is charged with a substantive offense arising from the actions of a coconspirator, not when a conspirator is charged with conspiracy." 415 F.3d at 313. Thus, Petitioner's argument that his attorney should have challenged the Court's failure to have the jury apply Pinkerton principles actually is foreclosed not supported by Collins. Nevertheless, Collins does stand for the proposition that when a jury has deliberated over a conspiracy charge and found a defendant guilty of involvement with that conspiracy, the Court should further instruct the jury to determine the threshold amounts attributable to the conspiracy and to the defendant individually. Id.

---

[1] Pinkerton v. United States, 328 U.S. 640, 645 (1946) (holding that "a conspirator may be convicted of substantive offenses committed by co-conspirators in the course of and in furtherance of the conspiracy . . . ."

13

at 313-14.

In the instant case, the jury found that the conspiracy involved more than five kilograms of cocaine powder, but it was not asked to determine the amount for which Petitioner was responsible. Nevertheless, even assuming that counsel was deficient for failing to seek an additional instruction soliciting such a finding, Petitioner cannot show that he was prejudiced by counsel's performance because, as the Fourth Circuit already has determined, the testimony and other evidence before this Court fully supports the conclusion that Petitioner was involved with at least 62 kilograms of cocaine powder, the determination which ultimately controlled his Guidelines sentencing calculations. Barragan, 222 F. App'x at 260-61.

Indeed, the Court of Appeals explained that the evidence of Petitioner's guilt included a recording of his discussion of a 44-kilogram cocaine shipment with his brother and testimony from a co-conspirator that he had seen Petitioner with over 100 kilograms of cocaine and from another witness that he had seen Petitioner either buy or sell nearly 80 kilograms of cocaine; and that evidence was corroborated by a confidential informant who made reference to three separate cocaine transactions involving at least 18 kilograms of cocaine. Id. Therefore, Petitioner cannot establish that but for counsel's failure to seek an additional instruction, he would have received a lower sentence. On the contrary, the evidence before the jury would have compelled it to find that he was responsible for more than the five kilograms of cocaine powder on which he contends his sentence should have been based. In other words, even if counsel should have sought the additional instruction, Petitioner was not prejudiced by that deficiency inasmuch as the overwhelming and essentially uncontroverted evidence established his culpability for a quantify of cocaine which far exceeded the quantity used to calculate his sentence. Therefore, this claim must be rejected. Barragan, supra, at 261 ("In light of the testimony and evidence

provided at trial, we hold that the district courts's determination as to the total amount of cocaine attributable to Barragan was not erroneous.").

### 2. Petitioner's claim that counsel was ineffective at sentencing and on appeal for failing to challenge the marijuana calculations under U.S. Sentencing Guidelines Amendment 484 is baseless.

Petitioner argues that replacement counsel should have challenged the amount of marijuana attributed to him pursuant to U.S.S.G. Amendment 484. Amendment 484 (effective Nov. 1, 1993) modified U.S. Sentencing Guidelines § 2D1.1 to provide that the calculation of drug quantities to be attributed to a defendant should not "include materials that must be separated from the controlled substance before the controlled substance can be used." However, Petitioner's claim that counsel was ineffective for failing to raise a challenge under this Amendment fails for two critical reasons.

First, Petitioner has not directed the Court's attention to any evidence that even suggests that the marijuana shipment which was used to calculate his sentence somehow was adulterated and had non-marijuana materials which should have been excluded from his calculations. Thus, inasmuch as it is well settled that "[u]nsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing," Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'd on other grounds, Yeasts v. Angelone, 166 F.3d 255 (4th Cir. 1999), nor do they even entitle a petitioner to discovery, United States v. Roan, 378 F.3d 382, 403 (4th Cir. 2004), allegations like the instant ones cannot possible entitle this Petitioner to any relief. United States v. Thomas, 221 F.3d 430, 437 (3rd Cir. 2000) ("[Vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."); United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (conclusory allegations, unsupported by

specific facts, do not support a claim for relief under § 2255); Wilson v. United States, 962 F.2d 996, 968 (11th Cir. 1992) (bare, conclusory allegations of ineffective assistance of counsel are insufficient to warrant habeas relief); United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991) ("Conclusory allegations of ineffective assistance are insufficient.").

Second, as the Government correctly notes, Petitioner's sentence for the conspiracy conviction carried the highest penalty of his three convictions. Therefore, even counsel had somehow raised a successful challenge under Amendment 484 at sentencing or on appeal, such fact would have had no impact on the length of his sentence. Rather, because Petitioner's conspiracy conviction properly subjected him to a minimum of 292 months imprisonment, even if his 240-month concurrent sentence for the marijuana conviction should have been lowered by virtue of Amendment 484, Petitioner still would have received a total of 352 months imprisonment by virtue of his convictions under Counts One and Six. In sum, because Petitioner has failed to demonstrate either deficient performance or that, but for counsel's alleged error, he would have received a more lenient sentence, this claim also must be flatly rejected. Royal, 188 F.3d at 248-49 (noting requirement for a showing of a more lenient sentence in order to establish ineffective assistance of counsel at sentencing).

**B. Petitioner's other conclusory allegations of ineffectiveness also are baseless.**

Although not delineated as clearly as the two preceding claims, Petitioner also raises a litany of other complaints against his attorneys. For instance, Petitioner alleges that replacement counsel failed to argue that the PSR's drug quantity calculations were based upon unreliable co-conspirator statements. However, the record reflects that this is precisely the argument which counsel raised at sentencing, both in her memorandum (Criminal Case No. 3:03cr231-1, Doc. No. 576) and in her argument before the Court. Such efforts, however, were rejected on the

ground that the co-conspirators' testimony was amply corroborated by other information which was uncovered during the DEA's thorough investigation of Petitioner.

Petitioner argues that counsel should have had the marijuana re-tested to determine the usable portions. However, as was already noted, apart from innuendo and the speculation occasioned by this allegation, Petitioner has not proffered any evidence to discredit the drug analyses performed by the DEA or to otherwise suggest that the marijuana was not authentic.

Petitioner also argues that trial counsel should not have stipulated to the authenticity of the wire tap recordings and that he failed to explain the significance of such stipulation to Petitioner. Notably, Petitioner does not identify any ground on which the recordings were subject to challenge as either inauthentic or inadmissible. Consequently, this conclusory allegation can be rejected on that basis alone. Moreover, as trial counsel explains in his Affidavit, he only stipulated to the recordings after the Government laid a proper foundation for their admission; therefore, Petitioner's right to require the Government to prove the recordings' authenticity simply was not compromised. Such tactical decision appears reasonable and does not support Petitioner's conclusory allegation that counsel was ineffective in this regard.

Petitioner also alleges that trial counsel failed to conduct an adequate investigation and failed to examine potential witnesses. However, trial counsel's Affidavit explains that he routinely met with Petitioner, spent approximately 35 hours with him preparing for his trial, developed a trial strategy for combating the Government's case, discussed potential motions with Petitioner, reviewed all of the Government's witness statements, interviewed potential witnesses and decided who to call in Petitioner's behalf. In addition, and equally critically, trial counsel reviewed all of the surveillance tapes with the DEA, he visited Petitioner's garage where much of the conspiracy's activities were proven to have occurred, and he reviewed all of the

physical evidence that the Government planned to introduce.

As like certain other of his allegations, Petitioner's claim is short of specific factual details. That is, Petitioner has failed to indicate what additional measures counsel should have taken or how those efforts would have made a favorable impact on his case. Nor does Petitioner identify any additional witnesses whom he believes would have presented helpful testimony for him. Once again, therefore, Petitioner's conclusory allegation which, in any event, is entirely rebutted by Respondent's evidentiary proffer, must be rejected.

Petitioner also claims that his attorney was ineffective for failing to seek a downward departure. However, such claim is belied by the evidence to which the Court previously referred in detail. Such evidence shows that sentencing counsel sought a downward variance for Petitioner on the grounds that he was a first-time offender who had successfully worked and run his own business for a period of time, and because his sentencing exposure was enhanced on the alleged basis of unreliable co-conspirator testimony. Unfortunately, for Petitioner, the Court simply found that there was no basis for such a departure. Indeed, Petitioner still does not identify any basis for a downward departure or variance. Consequently, this claim is both factually and legally baseless.

Last, Petitioner alleges that his attorney should have argued that because he was released on bond prior to trial, such evidence tended to show that he was not a leader of the organization. Clearly, however, Petitioner cannot establish either deficient performance or prejudicial result on the basis of this allegation. Indeed, it goes without saying that such an argument would have been wholly unpersuasive to this Court. Inasmuch as the Fourth Circuit noted that the leadership enhancement properly was applied, this claim is patently frivolous.

## IV. CONCLUSION

As the foregoing discussion illustrates, Petitioner has failed to forecast evidence of a genuine issue of material fact which must be resolved. Likewise, Petitioner has failed to demonstrate an entitlement to relief by any of his claims or stray allegations. Accordingly, Respondent's Motion for Summary Judgment will be granted, and Petitioner's motion to vacate will be denied and dismissed.

## V. ORDER

**IT IS, THEREFORE, ORDERED THAT:**

1. Respondent's Motion for Summary Judgment (Doc. No. 6) is **GRANTED**; and

2. Petitioner's de facto motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence (Doc. No. 1) as supplemented, is **DENIED** and **DISMISSED.**

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made the necessary showings to support the issuance of the certificate as required under 28 U.S.C. § 2253(c). Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

**SO ORDERED**.

Signed: January 18, 2011

Graham C. Mullen
United States District Judge